UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21892-CIV-LENARD/TORRES

SHARON MILINAZZO, individually and as
assignee of Lisa Singh and Keith Lydell
Cox,

       Plaintiff,

vs.

STATE FARM INSURANCE COMPANY,

       Defendants.
_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This matter is before the Court on Plaintiff's Motion to Compel Production of Documents and Incorporated Memorandum of Law ("Plaintiff's Motion") [D.E. 21-1].[1] Sharon Milinazzo ("Plaintiff") seeks production of documents from State Farm Insurance Company ("Defendant") as part of Plaintiff's coverage here.[2] In support of its discovery objections, Defendant's Response to Plaintiff's Motion argues that the information sought is irrelevant and privileged, and further contends that Plaintiff's motion should be denied for failing to comply with Fed. R. Civ. P. 37(a)(2)(b) and the Court's Local Rules.[3] [D.E.

---

[1]    Discovery disputes have been referred to this Court by the Honorable Joan A. Lenard [D.E. 4].

[2]    Milinazzo initially filed a state tort claim against Singh and Cox after she was rear-ended by a vehicle owned by Singh and driven by Cox. Pursuant to a Settlement and Assignment Agreement, Milinazzo is an assignee of Singh and Cox's rights and interest in any cause of action they made have against State Farm for allegedly failing to defend, indemnify, and/or settle that claim within the policy limits.

[3]    Federal Rule of Civil Procedure 37(a)(2)(b) requires the movant to "in good faith confer[] or attempt[] to confer with the person or party failing to make the discovery

27-1]. Plaintiff's Reply reiterates the arguments made in the Motion to Compel [D.E. 28].

The pending Motion is ripe for disposition. After carefully considering the parties' arguments, as well as the court file, and for the reasons that follow, this Court hereby orders that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.     *GENERAL ISSUES RAISED BY DEFENDANT'S OBJECTIONS*

Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party." Courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules, even after the 2000 Amendments to the Rule. *McMahon v. Eastern Steamship Lines, Inc.*, 129 F.R.D. 197, 198 (S.D. Fla. 1989); *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001). To sustain its discovery objections in response to the pending motions to compel, Defendant must, therefore, show that the requested discovery has no possible bearing on the claims and defenses in this case. *See Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978)); *Graham*, 206 F.R.D. at 254 ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant."). This means that Defendant must show either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure. *E.g., Giardina v. Lockheed Martin Corp.*, 2003 WL 21276348 (E.D. La. May 30, 2003).

Before addressing the individual document requests, we first review the general principles governing the Defendant's discovery objections raised in this matter.

---

in an effort to secure the information or material without court action."

### A. *Failure to Confer with Opposing Counsel*

Prior to filing a motion to compel, Federal Rule of Civil Procedure 37(a)(2)(B) and the local rules of the Southern District require the movant to try to confer with opposing counsel and make efforts to secure requested information without court assistance. We find that Plaintiff's efforts to resolve this discovery dispute were materially sufficient. *See* Exhibit A [D.E. 27-2]. Therefore, we will address the merits of the issues raised.

### B. *Overbroad Request*

Objections which state that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are deemed without merit by this Court. A party properly objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. *See* Fed. R. Civ. P. 33(b)(4); *Josephs v. Harris Corp*, 677 F.2d 985, 992 (3d Cir. 1982)("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory.").

Defendant complains that the Plaintiff's discovery requests are overbroad. Although Defendant fails to substantiate this objection to any meaningful degree, a review of Plaintiff's discovery requests lends some merit to Defendant's argument (i.e. "All communications of any type sent to, or received from, State Farm, its agents, employees, and/or representatives regarding Cox's claim."). Additionally, Plaintiff's requests may seek proprietary and irrelevant information, such as any internally used policy manuals.

This objection, however, is moot, as the only documents Defendant withheld from production are those listed in the Privilege Log. To the extent Plaintiff's Motion seeks documents listed in the Privilege Log, we will address those requests below.

### C. *Relevance*

Information requested via discovery is relevant if it appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 345 (1978); *see also* Local Rule 26.1.G.3. The admissibility of evidence in a diversity action is governed by federal law. *See, e.g., Peat, Inc. v. Vanguard Research, Incorp.,* 378 F.3d 1154, 1159 (11th Cir. 2004) (applying state law for substantive issues in a diversity action, but utilizing federal rules for the admissibility of evidence). Discovery should ordinarily be allowed unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action. *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-Civ-Gold, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001).

A recent decision in the Southern District of Florida addressed the relevancy of certain discovery requests in the context of a first-party action against an insurer for breach of contract. *See, e.g., Atrium on the Ocean II Condo. Ass'n v. QBE Ins. Corp,* No. 06-14326-CV-Graham-Lynch, 2007 U.S. Dist. LEXIS 74962, at *4 (S.D. Fla. Oct. 9, 2007). In that case, a condominium association requested documents that formed the basis for denial of plaintiff's insurance claim; to wit, the insurer's factual inquiry and evaluation of the claim decision. *Id.* at *2. The defendant in *Atrium* objected based on relevance, and Plaintiff filed a motion to compel the following discovery request:

> The Motion concerns Request No. 4 for "[a]ll documents relating to the investigation, processing, and analysis of Plaintiff's insurance claims" as well as Requests No. 7 and 8 for "[a]ny document relied upon, or which form any basis, for QBE's assertion that certain of Atrium's claims are uncompensable as 'overcharges' … or due to 'mold exclusions' … including, but not limited to, schedules of industry standards, similar uncompensable claims relied upon by QBE, accountings, valuation charts or memoranda or any written recommendations."

*See id.* (citing Mag. J. Lynch's August 16, 2007 Order that was appealed to District Judge Graham). Judge Graham, in affirming the Magistrate Judge's ruling, held that the aforementioned documents in the claims file were relevant and discoverable in plaintiff's breach of contract action.

For similar reasons, we also find that documents related to the "investigation, processing, analysis" and ultimate denial of Plaintiff's claim are relevant to the extent they relate to Plaintiff's breach of contract claim.[4] The record is undisputed that only the breach of contract claim is at issue at this point, even though the pending complaint also included a bad faith claim. But, in response to a motion to dismiss that claim, Plaintiff stipulated that the bad faith claim was not yet ripe and asked that the Court abate that claim pending the resolution of the coverage dispute on the contract claim. [D.E. 12 at 1]. That stipulation is in line with well established authority that a claim for bad faith is premature where there has not yet been a determination of coverage. *See Vest v. Travelers Ins. Co.,* 753 So. 2d 1270, 1276 (Fla. 2000); *Blanchard v. State Farm,* 575 So. 2d 1289 (Fla. 1991); *Allstate v. Clohessy,* 32 F. Supp. 2d 1328, 1332 (M.D. Fla. 1998). As

---

[4] *But see Tower 1515 Condo. Apartments Assoc., Inc. v. QBE Ins. Corp.*, No. 05-80780-CIV-Hurley, 2006 U.S. Dist. LEXIS 73401, at *5 (S.D. Fla. August 23, 2006) (holding that claim file discovery was premature in a first-party breach of contract claim). The *Atrium* court acknowledged, but declined to follow *Tower 1515*, opining that the *Tower 1515* decision mainly addressed the issue of defendant's waiver of objections, and was not an analysis of claim file discovery. *Atrium*, 2007 LEXIS 74962 at *6. The *Atrium* court further distinguished *Tower 1515* by pointing out that the discovery request at issue was overly broad, whereas in *Atrium*, the plaintiff made a more limited discovery request.

Interestingly, Defendant also relied on *Tower 1515* as grounds to not turn over documents in the claims file. As a practical matter, however, Defendant will have to justify its denial of coverage to mount a breach of contract defense. Even if we did not compel the production of these documents, the information contained therein would have likely have been disclosed voluntarily.

such, discovery geared *solely* towards Plaintiff's bad faith claim is premature and irrelevant at this stage, and thus not subject to discovery.[5]

### D.     *Attorney-Client Privilege*

Florida law governs application of the attorney-client privilege in a federal diversity action. *Bradt. v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981).[6] In Florida, communications between a lawyer and a client are "confidential" and, barring exception, not subject to disclosure. Fla. Stat. § 90.502.  The burden of establishing the attorney-client privilege rests on the party claiming it. *See, e.g., Southern Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377 (Fla. 1994).

Unlike a claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a "heightened level of scrutiny." *Id.* at 1383. To establish that communications are protected by the attorney-client privilege, Defendants must demonstrate that the documents satisfy the following requirements:

> (1) the communication would not have been made but for the contemplation of legal service;
>
> (2) the employee making the communication did so at the direction of his or her corporate superior;
>
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
>
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

---

[5] It goes without saying, of course, that the fact that some of these documents may contain relevant information with respect to the premature bad faith claim does not foreclose their discoverability if they are also relevant to the breach of contract claim.

[6] Decisions rendered in the Fifth Circuit prior to close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

>   (5) the communication is not disseminated beyond those persons who, because fo the corporate structure, need to know its contents.

*Id.*

In an insurance context, the attorney-client privilege only attaches when an attorney performs acts for an insurer in his processional capacity an in anticipation of litigation. *See, e.g., Bankers Inc. Co. v. Florida Dept. of Ins.*, 755 So. 2d 729 (Fla. 1st DCA 2000) (finding no attorney-client privilege exists where attorney is merely "a conduit" for the insurer).

As detailed in the Privilege Log, Defendant is withholding the following communications: (1) communications between Cari Sanchez, State Farm's claim representative who handled the underlying claim on behalf of State Farm, and Christopher Esco, Esq., and Luis Ordonez, Esq., attorneys for State Farm and Sanchez, regarding Plaintiff's lawsuit against State Farm's insured, subpoenas served on State Farm in that lawsuit, and Sanchez' deposition in that lawsuit; and (2) communications between State Farm employees regarding conversations with State Farm's attorney, Luis Ordonez, Seq., concerning Plaintiff's bad faith claim against State Farm. *See Privilege Log* [D.E. 27-7]. At first blush, these communications appear to fall within the purview of the attorney-client privilege.

But Plaintiff argues, on the other hand, that the claim file was not created "but for" the contemplation of legal services, but rather as part of the insurer's standard investigation of the claim. *See Bankers,* 755 So. 2d at 729. Indeed, the parties' main point of contention – which is also pertinent to the applicability of work-product immunity – is the precise time period when Defendant's attorneys can be said to have contemplated legal action.

The record at this stage shows, however, that on November 20, 2001, Defendant received a letter requesting liability coverage information for its insured, which stated, "If we do not hear from you within thirty (30) days from the date hereof, we will put this matter in suit." *See* November 20, 2001 letter from Charles Flaxman, Esq. to State Farm [D.E. 27-6]. Then, on May 28, 2002, Defendant expressly denied the coverage claim. *See* May 28, 2002 letter from Cari Sanchez to Charles Flaxman, Esq. [D.E. 27-4].

Based on this record, we find that, at the very least, the attorney-client privilege shields discovery of documents dated after May 28, 2002. Incidentally, every document in the Privilege Log where Defendant raises attorney-client privilege, save two undated documents, were prepared after May 28, 2002. Those documents at issue are, therefore, privileged. With respect to the two undated documents in the Privilege Log, MILI 0103, and MILI 0122, the Court is satisfied, based on the description of the documents, that attorney-client privilege similarly applies as they were clearly litigation oriented.

### E.    *Work Product Immunity*

Claims of work product "immunity" are governed by the principles set forth in Federal Rule of Civil Procedure 26(b)(3) which reads in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

A party must anticipate litigation *at the time* the documents were drafted for these protections to apply. *CSK Transp., Inc., v. Admiral Ins. Co.,* No. 930132-CIV-J-10, 1995

WL 855421, at *2 (M.D. Fla. July 20, 1995). Materials or documents drafted in the ordinary course of business are not protected. *Id.*

Therefore, we need to determine *when* the document was created, and *why* it was created. *See, e.g. In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"); *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp.*, 2003 WL 21146674, *14 (M.D. Fla. May 13, 2003) ("The testing question for the work product privilege, . . . is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omitted); *Guidry v. Jen Marine LLC,* 2003 WL 22038377, *2 (E.D. La. Aug. 25, 2003) ("in determining whether a document was made in anticipation of litigation, the primary focus is the reason or purpose for creating the document.").

Like assertions of attorney-client privilege, the burden is on the party withholding discovery to show that the documents should be afforded work-product immunity. *See United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company*, No. 6:04-CV-1838-Orl-22JGG, 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 (10th Cir. 1998) ("the party asserting work product privilege has the burden of showing the applicability of the doctrine")); *Ameritrust Co., N.A. v. White,* 1993 WL 819124, *3 (N.D. Ga. Oct. 20, 1993). "[t]he mere conclusory assertion that material sought is covered by . . . work product privilege is not sufficient to render such material undiscoverable.").

As Plaintiff argues and Defendant concedes, the onus is thus on Defendant to provide competent evidence that the material in question was created in anticipation of litigation. The parties do not agree, however, on which law, state or federal, applies.

### 1. *Federal Law Governs Work Product*

Defendant argues that Florida law controls the determination of whether documents in the Defendant's claims file are protected from disclosure by the work-product doctrine:

> State Farm anticipated litigation in state court from Plaintiff and Plaintiff's insurer and, in fact, Plaintiff filed her personal injury action against State Farm's insured in state court. She litigated her entire case against the insured in state court and ultimately entered into a settlement with State Farm's insured there. Plaintiff then filed the instant action against State Farm in state court, but State Farm removed the action to this Court on July 23, 2007 based on diversity. Accordingly, all the documents which Plaintiff seeks were created by State Farm in anticipation of state court litigation. Consequently, the Court's work product analysis must necessarily flow from Florida law.

[D.E. 27 at 11]. Defendant relies on *Cozart v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674 (M.D. Fla. 2006), to support its argument.[7] Because we disagree with Defendant and find federal law controlling, a closer inspection of *Cozart* and its predecessor cases is warranted.

Fifteen years before *Cozart*, the Middle District of Florida applied federal law for work product issues, as distinguished from state law that applied to attorney-client privilege issues:

> While Rule 501, Fed.R.Evid. provides that Florida law of *privilege* governs in a federal diversity suit, the work product doctrine is a limitation on discovery in federal cases and federal law provides the primary decisional

---

[7] Plaintiff also cited to *Shams v. State Farm Mut. Auto. Ins. Co.*, No. 6:06-CV-621-Orl-28-DAB, 2007 WL 496610 (M.D. Fla. Feb. 12, 2007), which relied primarily on *Cozart* as precedent. The *Shams* and *Cozart* decisions were both authored by United States Magistrate Judge David Baker of the Middle District of Florida. We thus need only review the facts of *Cozart* here.

> framework ... Therefore plaintiff's Florida state court cases on discoverability of claims files are not binding.

*Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990) (emphasis in original) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947)). Thus, for many years it was well established in the Middle District of Florida, as was the case elsewhere, that federal law provided the decisional framework for work product issues in discovery matters arising in federal court. *See also Airheart v. Chicago & N.W. Transp. Co.,* 128 F.R.D. 669, 671 (D.S.D. 1989) (applying federal law for work product determination); *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 133-134 (S.D. Ga. 1982) (same).

On April 7, 2005, just months before the ruling in *Cozart*, the Florida Supreme Court issued an opinion in *Allstate Indemnity Co. v. Ruiz*, 899 So. 2d 1121 (Fla. 2005), holding that the entire claims file is discoverable, over a claim of work product, in a bad faith action brought in state court. *Ruiz* has recently been a point of contention in both state and federal court, because the narrow issue on appeal was the scope of the work product doctrine, yet the holding has also been construed as abolishing work product immunity *and* attorney-client privilege in bad faith actions:

> Consistent with the analysis outlined, we hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection.

*Ruiz,* 899 So.2d at 1129-1130 (discussed extensively on the question of its application to attorney-client privilege in *Nowak v. Lexington Ins. Co.*, No. 05-21682-CIV-Moreno-

Simonton (S.D. Fla. March 16, 2006) ((Simonton, Mag. J.) and *Saewitz et. al. v. Lexington Ins. Co.,* No 05-21917-CIV-Lenard-Klein (S.D. Fla. April 10, 2006) (Klein, Mag. J.)). *See also XL Specialty Ins. Co. v. Aircraft Holdings, LLC,* 929 So. 2d 578 (Fla. 1st DCA 2006) (declining to extend *Ruiz* to documents protected by attorney-client privilege in bad faith actions), *review granted,* 935 So. 2d 1219 (Fla. 2006) (pending).

With this in mind, we turn to *Cozart*, where the plaintiff sued his insurance company in state court for bad faith practices following a successful coverage action against the company. *Cozart*, 233 F.R.D. at 674. The defendant removed the action to federal court based on diversity. The plaintiff then sought production of documents related to the underlying claims file, and defendant objected based on work-product doctrine and attorney-client privilege. The court first found *Ruiz* applicable to an attorney-client privilege issue and thus applied the rule in *Ruiz* to a case pending in federal court. The court then applied *Ruiz* with respect to the work-product issue and applied that rule to the pending federal court case, distinguishing *Totaltape* in the process:

> We do not find this *pre-Ruiz* opinion (*Totaltape*) to be dispositive of the issue here. The work product at issue in the underlying coverage litigation was created with respect to the then pending *state* court case. As the coverage litigation was initiated, litigated, and resolved solely in state court, Rule 26 of the Federal Rules of Civil Procedure does not apply to any work product relating to that litigation.

*Cozart*, 233 F.R.D. at 676 (emphasis in original). Without further citation or limitation, the court held that state law should apply to work-product immunity over an issue pending in federal court. *Id.*

Whether *Cozart* was right or wrongly decided on its facts is truly not relevant here for one obvious reason: this is not a bad faith case. Defendant has taken great pains to highlight the fact that this case does not yet raise any bad faith issues, and based on this

Defendant has argued, and the Court agrees, that the discovery that Plaintiff is entitled to in this case, based on relevance, is more limited than if the case were strictly a bad faith case. The issues here are narrower and deal strictly with a contractual coverage dispute. But Defendant would like to apply these particular work product cases that apply *only* when bad faith claims are present (in an effort to apply state law work product immunity that may be broader than under federal law) to a case that explicitly does not involve any *Ruiz* or *Cozart* issues.[8] In other words, Defendant is trying to have it both ways to further its purposes. Because we choose to apply principles of federal law in a more principled fashion, Defendant's arguments must fail in this case.

Therefore, *Cozart* has no application here in derogation of well established principles of federal procedural law. For instance, the Tenth Circuit's decision in *Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998), is far more applicable and persuasive: "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)...." *Id.* (quoting *United Coal Cos. v. Powell Constr. Co.* 839 F.2d 958, 966 (3d Cir. 1988)). Thus, to the extent Defendant was citing *Cozart* as holding generally that state work product rules govern in federal diversity cases, we would decline to follow it and instead would normally follow a Circuit Court of Appeal decision in the absence of binding Eleventh Circuit precedent. *See also Atrium,* 2007 U.S. Dist. LEXIS 74962, at *4 (applying federal law to the issues relating to the work product doctrine) (citing this

---

[8] Notably, the coverage issue in *Cozart* had already been resolved, whereas here the coverage question is currently pending before this Court. The documents Plaintiff seeks "happened to have been created during the underlying state court litigation," but there has yet to be a coverage determination. [D.E. 28 at 5 (Plaintiff's Reply)].

Court's opinion in *Place St. Michel, Inc. v. Traveler's Prop. Cas. Co.*, No. 06-21817-CIV-Lenard-Torres, 2007 U.S. Dist. LEXIS 25075 (S.D. Fla. Apr. 4, 2007)).

Finally, and not surprisingly, aside from the unique *Ruiz*-related issues raised by *Cozart* and *Shams*, we have found no case that generally holds state law governs the work product doctrine in federal court, and the following explains why:

> In diversity cases, the federal courts, with uniformity albeit not with self-evident logical consistency, have concluded that issues of attorney-client privilege are substantive and thus controlled by the forum state's law, while issues of work-product doctrine are procedural and thus controlled by federal law.  The reason for this bizarre distinction is that Rule 501 of the Federal Rules of Evidence requires that the privilege law of the forum state be applied, but is silent as to what law applies to issues of work-product doctrine, which are governed by Federal Rule of Evidence, codifying a Supreme Court case which created the concept of work-product protection.

E. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 1131-1132 (5th ed. 2006); *cf. Peat,* 378 F.3d at 1159 (Eleventh Circuit follows general rule that admissibility of evidence in federal courts is governed by federal law, while state law controls the substantive issues in a diversity action).

### 2.   *Work Product in the Insurance Context*

Now that we have decided that federal law, not state law, provides the rule of decision in this case, we turn to the more complex task of defining the parameters of the federal work product immunity is the context of insurance claim files.  It does not appear that the Eleventh Circuit has specifically addressed the application of the work product doctrine to an insurer's investigation of claims. *Essex Builders Group*, 2006 WL 1733857 at *4.[9]

---

[9]   Because this Court is applying federal law with respect to the work-product doctrine, a further discussion of state law is unwarranted.  We will add, however, that we are not necessarily convinced that the outcome of the Court's rulings here would have been materially different had Florida law governed.

Plaintiff takes the position that "documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and are not work product." *Essex Builders,* 2006 WL 1733857 at *2 (citing *Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 662 (S.D. Ind. 1991)).  Paradoxically, investigating documents (i.e. the claim files) from an insurance company straddle both ends of this definition, because it is in the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation. *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 134 (S.D. Ga. 1982).  Yet a hard and fast rule in either direction would frustrate the various goals of modern discovery practice, so courts tend to examine the particular facts of each case:

> At some point … an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation.  This is the point where the probability of litigating the claim is substantial and imminent.  The point is not fixed, it varies depending on the nature of the claims, and they type of investigation conducted.

*Id.* (internal citations omitted).  *See also S.D. Warren Co. v. Eastern Elec. Corp.,* 201 F.R.D. 280, 282-83 (D. Me. 2001) (adopting majority view that insurance companies are not accorded special treatment by the work product doctrine and a fact specific approach must be applied).

Plaintiff asks that we utilize the rebuttable presumptions established in *Harper* that documents or things prepared before the final decision on an insured's claim are not work product, and that documents produced after claims denial are work product. *See Essex Builders,* 2006 WL 1733857 at *2.  The presumption may be rebutted "by specific evidentiary proof of objective facts." *Id.* (citing *Harper,* 138 F.R.D. at 663).  The Court agrees with Plaintiff's argument, and Defendant is entitled to work-product immunity for those documents created after Defendant denied the claim for coverage on May 28, 2002 [D.E. 27-4].

The only remaining issue is whether the Defendant offered "specific evidentiary proof" that documents prepared before the final decision on the insured's claim are entitled to work product protection. As mentioned earlier, Defendant points to a letter dated November 20, 2001 wherein counsel for the insured requested liability coverage information, and which expressly threatened a lawsuit if not contacted within thirty days. [D.E. 27-6]. In some respects, one might anticipate litigation to ensue based on this letter alone. *See, e.g., Schipp v. General Motors Corp.*, 457 F. Supp. 2d 917, 923 (E.D. Ark. 2006) (finding insurer reasonably anticipated litigation upon receiving notice that its insured was involved in a fatal car accident). However, Defendant did not officially deny coverage until May 28, 2002, which meant there was lengthy discourse between the parties prior to the filing of the lawsuit. Plaintiff suggests that all documents prepared prior to this date were created in the ordinary course of business, not in anticipation of litigation, and the burden rests on Defendant to show otherwise.

Based on this record, Defendant has not provided this Court with sufficient information to determine which documents dated prior to May 28, 2002 that were identified in its Privilege Log are protected by the work product doctrine. Defendant failed to provide this Court with evidentiary proof of objective facts, via affidavits or deposition testimony, that documents before May 28, 2002, the date coverage was expressly denied, were prepared in anticipation of litigation. *See, e.g., Totaltape,* 135 F.R.D. at 201 (holding that a party failed in meeting its burden that documents were work product because the party resisting discovery failed to present affidavits or other evidentiary support for its contention that the documents were prepared in anticipation of litigation).

The Court will, therefore, find that no documents pre-dating May 28, 2002, should be withheld on work product grounds as Defendant has failed to satisfy its burden to show otherwise.

### 3. *Plaintiff Does Not Show a "Substantial Need" for Documents Prepared After May 28, 2002*

Protections offered by the work product doctrine are not absolute, and can be overcome if a party shows a "substantial need" of the documents and an inability to obtain a substantial equivalent of the documents or information without "undue hardship." Fed. R. Civ. P. 26(b)(3); *see, e.g. Schipp,* 457 F. Supp. 2d at 923. Thus, documents which we feel are immune from production due to work product privilege, may still be subject to disclosure if Plaintiff can show a substantial need.

Plaintiff argues vehemently that it needs the underlying claim files because bad faith actions against an insurer "can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did." *Brown v. Superior Court in and for the County of Maricopa,* 670 P.2d 725, 734 (Ariz. 1983) (citing *APL Corp. v. Aetna Cas. & Surety Co.*, 91 F.R.D. 19 (D. Md. 1980)). Plaintiff may in fact need the claim file for the bad faith action, but, again, such is not the case for Plaintiff's breach of contract action. Documents prepared *after* the denial of coverage are not materially irrelevant to the determination of coverage. And the determination of coverage question is the only one pending before the Court at this stage of the litigation. Therefore, the Court agrees with Defendant that Plaintiff has not shown that it may overcome Defendant's work product privilege for any documents post-dating May 28, 2002.

### II. INDIVIDUAL PRODUCTION REQUESTS

#### A. *Request for Production #2 - Communication Between State Farm and its Agents, Employees, Representatives and Third Parties*

Plaintiff seeks production of the entire claim file. Defendant is to produce those documents in the claim file dated prior to the coverage denial letter of May 28, 2002. Those documents are relevant, and not shielded by the work-product immunity (with the

exception of the two undated documents that were identified as being privileged as attorney-client communications).

### B. *Request for Production #3 - The Underwriting File*

Plaintiff requested the complete underwriting file from its inception to the present time. Although such documents are not privileged, they are irrelevant to the determination of coverage and Plaintiff's breach of contract claim. Defendant cites to a litany of cases discussing the discoverability of underwriting files [D.E. 27 at 16]. In short, the decisions suggest the underwriting files are discoverable in bad faith claims, but in breach of contract claims, only discoverable when the contract terms are ambiguous. *See, e.g., Champion Int'l Corp. v. Liberty Mut. Ins. Co.,*, 129 F.R.D. 63 (S.D.N.Y. 1990).

By Plaintiff's own admission, there are no underwriting issues in this case. [D.E. 27-2 at 1]. Moreover, Plaintiff has not alleged an ambiguity in the contract language. Defendant thus does not have to turn over the underwriting file. *See Johnson v. Geico General Ins. Co.*, No. 07-80310-Ryskamp, 2007 WL 3344253, at *3 (S.D. Fla. November 7, 2007) ("[T]he underwriting file is completely separate from the insured's policy file ... the only information contained in the underwriting file that could possibly be of interest would be the insurance contract or applications of insurance, which have already been provided"). An insurer's decision to issue insurance is distinct from an insurer's decision to deny a claim. If Plaintiff believes that documents in the underwriting file could lead to admissible evidence, Plaintiff would have to make a prima facie showing that material provisions of the policy are ambiguous; namely, the definition of the term "qualified vehicle." If Plaintiff makes that claim, Plaintiff could then try to argue that underwriting related documents could be used to resolve that ambiguity.

On this record, however, any documents in the underwriting vehicle do not appear to be relevant to a claim or defense that has been raised, to date, in this case.[10]

### C. *Request for Production #4, #5, #8, and #9*

These requests are nothing more than subsets of documents already requested in #2. As such, documents must be produced to the extent of our ruling for request for production #2.

### D. *Request for Production #6 - Standards and Claims Handling Guidelines on Qualifying Vehicles*

Defendant indicated it has already produced to Plaintiff the insurance policy that contains the controlling language defining vehicles qualified for coverage under the terms and conditions of the policy. The fact that the parties dispute whether Plaintiff's automobile was a "qualified vehicle" does not, in and of itself, make the term ambiguous and necessitate the disclosure of claims handling guidelines . As such, Defendant has complied with this discovery in full by disclosing the insurance policy. *See supra* sec. II.B.

### E. *Request for Production #7 - Standard Operating Procedures for Contacting Insureds*

Prior to the determination of coverage, standard operating procedures are irrelevant, and we deny Plaintiff's request to overrule Defendant's objections to discovery of these documents. Defendant's failure to comply with internal guidelines, though potentially relevant to a bad faith action, is irrelevant to the determination of coverage, (i.e. whether Defendant breached the insurance contract).

\* \* \*

---

[10] Alternatively, if discovery that is obtained during the course of the coverage dispute strengthens Plaintiff's argument that the underwriting file is possibly relevant, Plaintiff may raise the issue again.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of December, 2007.

                                                                                                           _____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
Honorable Joan A. Lenard
All counsel of record